## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
*Southern Division*

NATHANIEL RICHARDSON*, et al.*      *

      Plaintiffs.

v.                   *      **Civil No.: 25-DLB-03390**

CITY OF BOWIE*, et al.*

      Defendants.          *

                          *

## DEFENDANT CITY OF BOWIE'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

### INTRODUCTION

This case arises out of a *non-contact* police shooting.  City of Bowie ("the City") police officer Robert Warrington fired a single round at Plaintiff Nathaniel Richardson after he mistakenly believed that Richardson was armed and brandishing a firearm.  Fortunately, Richardson was not hit or injured, and Officer Warrington almost immediately realized his perception was inaccurate and he apologized (as set forth in the Complaint).

Plaintiffs, Richardson and the occupants of a vehicle he was about to get into, have sued Officer Warrington and the City in the following counts:

Count 1 - §1983 excessive force (vs. Officer Warrington)

Count 2 - §1983 due process (vs. Officer Warrington)

Count 3 - §1983 *Monell* claim (vs. City of Bowie)

Count 4 – Excessive force under Art. 24 of the Md. Decl. of Rights (vs. all Defendants)

Count 5 – Excessive force under Art. 26 of the Md. Decl. of Rights (vs. all Defendants)

1

Count 6 – Battery (vs. Officer Warrington)

Count 7 – Assault (vs. Officer Warrington)

Count 8 – Gross Negligence (vs. Officer Warrington)

Count 9 – Negligent Training, Supervision and Retention (vs. City of Bowie)

Count 10 – IIED (vs. Officer Warrington)

Count 11 – Negligent Entrustment & Negligent Supervision (vs. City of Bowie)

For the reasons that follow, the City of Bowie is entitled to dismissal of the claims against it.

## FACTS ALLEGED IN THE COMPLAINT

On September 12, 2014, Plaintiff Richardson was a passenger in a white SUV driven by Plaintiff Farrar traveling on Collington Road in Bowie, Maryland. *See* Complaint ¶12. Their two minor children were in the vehicle. *Id*. During the drive, Richardson briefly exited the vehicle to retrieve a hat that had blown out of the vehicle. *Id*. at ¶13. Officer Warrington stopped his police cruiser near Richardson, exited, approached him, posed a question, and then discharged his firearm in Richardson's direction. *Id*. at ¶14. The Complaint is intentionally vague about the particulars of that interaction, but for purposes of this Motion, that allegation is sufficient.

The bullet from Officer Warrington's firearm missed Richardson and struck a passing minivan. *Id*. at ¶15. According to the Complaint, Richardson posed no threat, displayed no weapon, made no aggressive or furtive movement, and did not resist or flee. *Id*. at ¶16. After firing his weapon, Officer Warrington "admitted what happened to Mr. Richardson and apologized to him." *Id*. at ¶18. Officer Warrington was subsequently criminally charged in the incident and awaits trial in the Circuit Court for Prince George's County. *Id*. at ¶21. According to Plaintiffs,

2

Officer Warrington violated various police department policies, which prohibit unlawfully or improperly discharging a firearm.  *Id*. at ¶¶22-26.

## ARGUMENT

**A. THE CITY OF BOWIE CANNOT BE LIABLE FOR COMMON LAW TORTS ARISING OUT OF THE OPERATION OF ITS POLICE DEPARTMENT BECAUSE IT ENJOYS GOVERNMENTAL IMMUNITY.**

To begin, Counts 9 and 11, which are common law torts involving negligent supervision and training, must be dismissed because they are barred by the City's governmental immunity. "Under Maryland common law, a local government is immune from tort liability when it functions in a 'governmental' capacity, but it enjoys no such immunity when it is engaged in activities that are 'proprietary' or 'private' in nature." *Zilichikhis v. Montgomery Cnty.*, 223 Md. App. 158, 192 (2015); *see also DiPino v. Davis*, 354 Md. 18 (1999); *Rounds v. Md. Nat'l Capital Park & Planning Commn.*, 411 Md. 621 (2015); *Williams v. Prince George's County*, 112 Md. App. 526 (1996).  This immunity is "deeply ingrained in Maryland law." *Nam v. Montgomery County*, 127 Md. App. 172, 182 (1999).

Under Maryland law, the operation of a police department is a "quintessential governmental function." *Clark v. Prince George's County*, 211 Md. App. 548, 558 (2013) (stating, "[t]he operation by a county of its police department is quintessentially governmental).  Thus, a plaintiff may not bring common law tort claims against a county or municipality that arise out of the operation of its police department.

As this Court previously recognized in another case involving a municipal police department:

… the City of Greenbelt is generally "immune from liability for tortious conduct committed while the entity is acting in a governmental capacity." *DiPino*, 354 Md. at 47. **The employment and supervision of police officers, which includes their training, is a governmental function, not private or proprietary**. *Lanford v. Prince George's Cnty., Md.*, 199 F.Supp.2d 297, 302 (D.Md. 2002). **Thus, the City of Greenbelt is immune from allegations of negligent training and supervision, and Defendants' motion should be granted as to Count Five**.

*See Mang v. City of Greenbelt*, No. DKC-11-1891, 2012 U.S. Dist. LEXIS 4345, *16-17 (D. Md. Jan. 13, 2012) (emphasis added); *see also Leese v. Baltimore Cnty*., 64 Md. App. 442 (450 (1985) (county's hiring and firing processes are governmental functions, and county was immune from liability); *Talley v. Anne Arundel Cnty.*, Civil No. RDB-21-347, 2021 U.S. Dist. LEXIS 177472, *16 (D. Md. Sept. 17, 2021) (stating, "Maryland courts have consistently held that the operation by a county of its police department is quintessentially governmental") (citations and internal quotes omitted); *Weeden v. Prince George's Cnty.*, Civil No. GJH-17-2013, 2018 U.S. Dist. LEXIS 95469, *8 (D. Md. June 4, 2018) ("The operation by a county of its police department is quintessentially governmental); *Disney v. City of Frederick*, Civil No. CCB-14-2860, 2015 U.S. Dist. LEXIS 20332, *13 (D. MD. Feb. 19, 2015) (dismissing a negligence against the City of Frederick based on governmental immunity); *Strebeck v. Balt. Cnty. Polce Dept.*, Civil No. JFM-05-2580, 2005 U.S. Dist. LEXIS 26570, *2 (D. Md. Oct. 17, 2005) (stating, "[a]s to his state law claims, the County has governmental immunity because 'the operation of a police department is a governmental function.'").

As such, the City is immune from liability for common law torts arising out of the operation of its police force, which is the basis for the allegations in Counts 9 and 11. Accordingly, Counts 9 and 11 must be dismissed.

### B. PLAINTIFFS FAIL TO STATE A *MONELL* CLAIM.

Next, Count 3 sues the City under § 1983 under a *Monell* theory for an alleged failure to train, supervise and discipline Officer Warrington. The claim alleges that "[d]espite BPD's written policies (General Orders 405, 406, 108), [it] failed to adequately train, supervise, and discipline officers, tolerated policy violations, and maintained customs and practices exhibiting deliberate indifference to constitutional rights." *See* Complaint ¶48. Of course, the pleading offers no particulars or other factual development whatsoever in support of those claims.

Section 1983 imposes liability on "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any . . . person . . . to the deprivation of any rights[.]" 42 U.S.C. § 1983. Under *Monell v. Dept. of Social Services*, 436 U.S. 658, 690 (1978), a county or municipality can be liable under this provision "if the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.*

To state a *Monell* claim, Plaintiffs must plausibly allege "the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of [her constitutional] rights." *Howard v. City of Durham*, 68 F.4 934, 952 (4th Cir. 2023). "[O]ne or two isolated constitutional violations alone cannot constitute a policy or custom of unconstitutional conduct." *Palma v. Montgomery Cnty., Md.*, 598 F. Supp. 3d 288, 297 (D. Md. 2022). Here, Plaintiffs do not identify any relevant policy, ordinance or regulation that proximately caused the alleged deprivation of rights. To the contrary, the Complaint alleges that the City has policies that *prohibited* the alleged misconduct here, but that Officer Warrington violated.

Further, Plaintiffs' vague reference to a purported lack of training and supervision do not make the claim viable. To state such a claim, "the failure to train [must] amount to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). A plaintiff proceeding under this theory must adequately plead *specific facts* alleging that "(1) the nature of the training was insufficient in some particularized manner; (2) the insufficiency of the training was a deliberate or conscious choice; and (3) a causal relationship existed between the failure-to-train and the injuries suffered." *Palma v. Montgomery Cnty.*, 598 F. Supp. 3d 288, 298 (D. Md. 2022). In short, a plaintiff "must identify a specific deficiency in training, rather than general laxness or ineffectiveness in training." *Washington v. Balt. Police Dept.*, 457 F. Supp. 3d 520, 533 (D. Md. 2020) (internal quotes omitted). And, a "single incident of misconduct by a police officer is not sufficient to state a claim for inadequate training." *Drewry v. Stevenson*, No. WDQ-09-2340, 2010 U.S. Dist. LEXIS 856, at 4 (D. Md. Jan. 6, 2010) (citation omitted).

Here, the Complaint is completely devoid of any factual detail or development whatsoever about the nature of the training that the City provides or allegations suggesting that the training deficiencies were a deliberate or conscious choice. Such bald, unsupported *Monell* claims are routinely dismissed. *See Peters v. City of Mount Rainier*, No. GJH-14-955, 2014 U.S. Dist. LEXIS 137146, at *5 (D. Md. Sept. 29, 2014) (plaintiff's *Monell* claim stated in a conclusory, boilerplate fashion that the City of Mt. Rainier "fail[ed] to train and properly supervisors its officers" which was insufficient); *Devi v. Prince George's County*, No. DKC-16-3790, 2017 U.S. Dist. LEXIS 133001, at *3. (D. Md. Aug. 21, 207) (dismissing a *Monell* claim that merely stated that the County failed to "adequately train, supervise, and discipline its officer against the use of excessive

6

force."); *Griffin v. Salisbury Police Dept.*, No. RDB-20-2511, 2020 U.S. Dist. LEXIS 192746, *12-13 (D. Md. Oct. 19, 2020) (same); *Krell v. Queen Anne's County*, No. JKB-18-637, 2018 U.S. Dist. LEXIS 209288, n.7 (D. Md. Dec. 12, 2018) (dismissing a *Monell* claim with boilerplate allegations like the one here, and stating "[a]lthough the Court recognizes that claims often fail at the motion to dismiss stage, there are several claims here that border on, or are in fact, frivolous. Plaintiff alleges *Monell* and *Longtin* claims by making only conclusory statements as to the hallmark element of those claims: a county policy or custom.").

Here, Plaintiffs have done nothing more than alleging a *Monell* claim with boilerplate allegations and buzzwords. As such, the claim must be dismissed.

### C. THE CITY IS NOT VICARIOUSLY LIABLE FOR EXCESSIVE FORCE.

Finally, Counts 4 and 5 allege excessive force under the Maryland Declaration of Rights. "Article 24 protects substantive due process rights while Article 26 protects the right to be free from unreasonable searches and seizures, courts therefore construe the provisions in pari materia with the Fourteenth and Fourth Amendments to the U.S. Constitution, respectively." *Hayes v. City of Seat Pleasant*, Civil No. DKC-08-2548, 2010 U.S. Dist. LEXIS 97137, at *4 (D. Md. Sept. 16, 2010). "To prevail under any claim alleging violations of Maryland constitutional rights [against a police officer] . . . proof must be adduced: 1) [t]hat the defendant-officer engaged in activity that violated a right protected under the Maryland Constitution; and 2) [t]he defendant-officer engaged in such activity with actual malice towards the plaintiff." *Rivero v. Montgomery Cnty.*, 259 F. Supp. 3d 334, 350 (D. Md. 2017). Actual malice is an "evil motive, intent to injure, ill will, or fraud." *Dehn Motor Sales, LLC v. Schultz*, 439 Md. 460, 486 (2014).

To state a claim for the excessive use of force and/or an unlawful seizure, Plaintiffs must adequately allege that they were seized. Indeed, if a person is never seized, then the Fourth Amendment simply has no application. *See Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989). In fact, as one federal court explicitly stated, "[a]lthough a seizure by physical force can occur when a police officer actually shoots a suspect, ***firing a shot that misses a suspect does not constitute a seizure by physical force***." *Plaza-Bonilla v. Cortazzo*, 2009 U.S. Dist. LEXIS 18882, *16 (E.D. Pa. Mar. 9, 2009). And, that is precisely what occurred here.

In *Plaza-Bonilla*, officers conducted a traffic stop on a vehicle that had been illegally parked in front of a known drug house. *Id*. at *2. While officers were investigating the occupants, plaintiff jumped back into the driver's seat and put the car into gear. *Id*. at *4. Plaintiff struck both officers with the car, and both Officer Cortazzo and Officer Burkhart discharged their firearms at Plaintiff. *Id*. at *5. Officer Cortazzo's shots made contact with the Plaintiff whereas Officer Burkhart's did not strike him. *Id*. at *7.

In its analysis, the Pennsylvania federal court noted that a seizure only occurs when a police officer, by means of physical force or show of authority, has in some way restrained a citizen's liberty. *Id*. at *15 (citations omitted). Importantly, the court stated, "[a]lthough a seizure by physical force can occur when a police officer actually shoots a suspect, *firing a shot that misses a suspect does not constitute a seizure by physical force*." *Id*. at *16 (emphasis added) (citations omitted). The court went on to rule that "[b]ecause it is undisputed that none of the shots fired by Burkhart actually struck Plaintiff, we find that Burkhart did not physically seize Plaintiff by discharging his firearm." *Id*.

Consequently, Count 4 fails to state a claim for excessive force insofar as it is undisputed, based on the pleading itself, that Officer Warrington did not fire a shot that made contact with any of the Plaintiffs.

The City recognizes, however, that the lack of contact between the gunshot and any of the Plaintiffs does not end the inquiry with respect to the alleged unlawful seizure in Count 5. This is because a seizure may occur by a show of authority as well. Where "physical force is absent, a seizure requires both a 'show of authority' from law enforcement officers and 'submission to the assertion of authority' by the [individual]." *United States v. Stover*, 808 F.3d 991, 995 (4th Cir. 2015). To establish a seizure by a show of authority, a plaintiff must demonstrate both that the officer objectively showed authority and that the plaintiff actually submitted to such authority. *See United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (citing *California v. Hodari D.*, 499 U.S. 621, 626-27, 628, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991)). No seizure occurs, however, if the suspect does not yield after shots are fired at him. *See generally Bella v. Chamberlain*, 24 F.3d 1251, 1256 (10th Cir. 1994) (finding that shots fired at plaintiff's helicopter constituted a show of authority but not a seizure because the plaintiff did not submit); *Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir. 1993) (finding that "the shots that were fired at [plaintiff's] truck and that did not hit [plaintiff] were not seizures because they . . . failed to produce a stop").

To be sure, whatever form the submission takes, without actual submission to the police, there is at most an attempted seizure, which is not subject to Fourth Amendment protection. *See Brendlin v California*, 551 U.S. 249, 254 (2007).

Here, the Complaint does not allege that Plaintiffs took any particular action after the shot was fired toward Richardson. More specifically, there are no allegations that any of the Plaintiffs

did anything to submit to any show of authority. In fact, the Complaint alleges that Officer Warrington did not issue any commands (nor that Plaintiff complied with any), *see* Complaint ¶17, and that after the shot was fired he apologized. *Id*. at ¶18. As such, the Complaint does not allege the necessary element of a seizure by show of authority in terms of any Plaintiff submitting to it. At most, the Complaint alleges an "attempted seizure," which does not state a claim here.

Finally, to the extent Plaintiffs have alleged a substantive due process violation (through the Maryland Declaration of Rights), that claim should be dismissed as well. To establish a substantive due process violation, Plaintiffs must show that Officer Warrington's conduct in discharging his service weapon was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Braun v. Burke*, 983 F.3d 999, 1002 (8th Cir. 2020). Importantly, "[n]egligence is never enough." *Id.; Parker v. Henry & William Evans Home for Children, Inc.*, 762 Fed. Appx. 147, 157 (4th Cir. 2019) (same).

As the Second Circuit explained:

Substantive due process, enforced by section 1983, does not afford a cause of action for police negligence. *See Daniels v. Williams*, 474 U.S. 327, 328, 106 S. Ct. 662, 663, 88 L. Ed. 2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348, 106 S. Ct. 668, 670-71, 88 L. Ed. 2d 677 (1986). Further, because the police must act in high-tension situations 'in haste, under pressure, and frequently without the luxury of a second chance,' *Whitley v. Albers*, 475 U.S. 312, 320, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986), even an intermediate level of fault, such as recklessness, is not enough to impose constitutional liability.

*Medeiros v. O'Connell*, 150 F.3d 164, 170 (2d Cir. 1998).

Further, as the Fourth Circuit explained in *Paige v. Herring*, 2022 U.S. App. LEXIS 3268, *5 (4th Cir. Feb. 4, 2022):

What is clear is that liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process, and behavior that would most probably support

a substantive due process claim is conduct intended to injure that is in some way unjustifiable by any government interest. Closer calls, however, are presented by conduct that is something more than negligence but less than intentional, and a determination as to which of these standards of culpability—intent to harm or deliberate indifference— applies requires an exact analysis of context and circumstances before any abuse of power is condemned as conscience shocking.

(Citations and internal quotes omitted).

Here, though Plaintiffs sprinkle the necessary terms and buzzwords in the pleading, the Complaint makes clear that immediately after discharging his weapon, Officer Warrington recognized that his initial perception was inaccurate and he apologized. *See* Complaint at ¶18. This negates any reasonable inference that his conduct shocks the conscience, even at the pleading stage. An accidental shooting, or even a reckless one, does not rise to the level of a substantive due process violation. *See Lee v. Williams*, 138 F. Supp. 2d 748, 762 (E.D. Va. 2001) (finding no substantive due process violation when police officers accidentally shot a hostage during a shootout with robbery suspects).

As such, Count 5 in its entirety should be dismissed.

**CONCLUSION**

The foregoing premises having been considered, the City of Bowie, one of the Defendants, respectfully requests that this Honorable Court grant its Motion to Dismiss.

Respectfully submitted,

_____/s/_____
JASON L. LEVINE 16631
7225 Parkway Drive
Hanover, Maryland 21076
443/561-1708
jlevine@lgit.org
*Counsel for Defendant City of Bowie*

11

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 1, 2026, the foregoing paper was filed and served via the Court's CM/ECF system.

_____/s/_____
JASON L. LEVINE 16631