# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
*Southern Division*

NATHANIEL RICHARDSON*, et al.*     *

     Plaintiffs.

v.                 *    **Civil No.: 25-DLB-03390**

CITY OF BOWIE*, et al.*

                       *

     Defendants.

                         *

## DEFENDANT CITY OF BOWIE'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

## INTRODUCTION

This case arises out of a non-contact shooting. Former City of Bowie ("the City") police officer Robert Warrington fired a single round at Plaintiff Richardson while Richardson was returning to a vehicle that had stopped on the side of the road so that he could retrieve his hat, which had flown out of the window. Warrington's shot missed Richardson, and Warrington was ultimately indicted and convicted of attempted second-degree murder and other serious offenses. Plaintiffs have now amended their pleading to jettison the federal claims against the City as well as the common law torts for which the City has immunity.

The City is now sued only in Counts 3 and 4, which are alleged violations of the Maryland Declaration of Rights. As explained below, as a matter of law, Richardson acted outside the scope of his employment and thus the City cannot be vicariously liable for his conduct. Further, Richardson was not "seized" within the meaning of Article 24 of the Maryland Declaration of Rights.

1

For the reasons that follow, the City should be dismissed.

**FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT**

On September 12, 2014, Plaintiff Richardson was a passenger in a white SUV driven by Plaintiff Farrar traveling on Collington Road in Bowie, Maryland. *See* Complaint ¶12. Their two minor children were in the vehicle. *Id*. During the drive, Richardson briefly exited the vehicle to retrieve a hat that had blown out of the vehicle. *Id*. at ¶13. Warrington stopped his police cruiser near Richardson, exited, approached him, posed a question, and then discharged his firearm in Richardson's direction. *Id*. at ¶14. Upon his initial approach, Warrington showed police authority, that Richardson submitted to that authority by remaining in place, and responding to Warrington's question. *Id*. at ¶15.

The bullet from Warrington's firearm missed Richardson and struck a passing minivan. *Id*. at ¶16. Richardson posed no threat, displayed no weapon, made no aggressive or furtive movement, and did not resist or flee. *Id*. at ¶17. Warrington did not issue any commands before firing. *Id*. at ¶18. After firing his weapon, Warrington "admitted what happened to Mr. Richardson and apologized to him." *Id*. at ¶19. Warrington was indicted in the Circuit Court for Prince George's County and ultimately convicted of attempted second-degree murder, "which required the jury to find beyond a reasonable doubt that Warrington acted with the specific intent to kill Mr. Richardson and without legal justification." *Id*. at ¶22.[1]

---

[1] Warrington actually had a bench trial, not a jury trial, but that fact is immaterial.

**ARGUMENT**

**A. THE CITY IS NOT VICARIOUSLY LIABLE BECAUSE WARRINGTON ACTED OUTSIDE THE SCOPE OF HIS EMPLOYMENT.**

In Counts 3 and 4, Plaintiffs seek to hold the City vicariously liable for Warrington's illegal actions. Though the pleading alleges that Warrington acted within the scope of his employment, that statement is a legal conclusion and not a factual allegation that the Court must assume the truth of at the motion to dismiss stage. For example, in *Dorsey v. Bolen*, 2021 U.S. Dist. LEXIS 207361, at *13 (S.D. W.Va. Oct. 27, 2021), the federal district court in West Virginia found a correctional officer's gratuitous and intentional use of force to be outside the scope of employment, and dismissed a claim that the employer was vicariously liable, ruling, "Plaintiff's allegations that this act was committed within the scope of employment is a legal conclusion, which the Court cannot and does not accept at this stage, and one that cannot save the dismissal of this claim." *See also Victoria Select Ins. Co. v. R&G Transp.*, 2017 U.S. Dist. LEXIS 221531, at *9-10 (E.D. Va. Sept. 7, 2017) ("Plaintiffs' assertion that Bratton 'was acting within the scope of his employment' at the time of the traffic accident amounts to a legal conclusion insufficient to state a claim . . ..."); *Cohen v. United States*, 2025 U.S. Dist. LEXIS 178326, at *11-12 (S.D.N.Y. Sept. 9, 2025) (alleging that a party acted in or outside the scope of employment is merely a "legal conclusion masquerading as a factual conclusion, which the Court need not accept as true") (citations and internal quotes omitted) (collecting cases). Although scope of employment questions are ordinarily for the fact-finder, when the facts are undisputed like they are here, it becomes a question of law for the court to resolve. *Tall v. Bd. of School Commr's of Balt City*, 120 Md. App. 236 (1998).

Here, the First Amended Complaint, by its own allegations, takes Warrington's conduct outside the scope of his employment. The pleading alleges that Warrington posed a brief question to Plaintiff Richardson and then shot at him. ECF 19 at ¶14. Further, Richardson posed no threat, displayed no weapon, made no aggressive or furtive movement, and did not resist or flee. *Id*. at ¶17. Nor did Warrington issue any commands prior to shooting. *Id*. at ¶18. Most significantly, moreover, the First Amended Complaint acknowledges that Warrington was convicted of attempted second-degree murder, which Plaintiffs point out requires a judicial finding that Warrington "acted with the specific intent to kill Mr. Richardson." *Id*. at ¶22; *see also* MPJI-Cr. 4:17C (elements of second degree murder, which include the intent to kill or inflict serious bodily harm that death would likely be the result).

In *Brown v. Mayor & City Council*, 167 Md. App. 306 (2004), Maryland's intermediate appellate court held that the City of Baltimore was not vicariously liable where one of its police officers, while in uniform but off duty, shot and killed a man whom he believed was having an affair with his wife. The Court recognized that under the Local Government Tort Claims Act ("LGTCA"), CTS. & JUD. PROC. ART. § 5-303, the local government is only vicariously liable for its employees' tortious acts when committed within the scope of employment, and that as a matter of law, the officer in *Brown* had not acted within the scope of his employment where his conduct was "unprovoked, highly unusual, and quite outrageous." *Id*. at 324 (citation omitted). Maryland has consistently declined to find that an officer acted within the scope of employment in similar circumstances. *See Wolfe v. Anne Arundel County*, 374 Md. 20 (2003) (officer made traffic stop and then raped the motorist – held outside the scope); *Sawyer v. Humphries*, 322 Md. 247, 254-260 (1991) (where officer threw rocks at motorist's car and physically assaulted the motorist with

no apparent law enforcement purpose – held outside the scope); *cf. Balt. City Police Dep't. v. Potts*, 468 Md. 265, 224-75 (2020) (officers who planted guns and drugs on suspects and lied in charging documents were acting with the scope because ultimately their goal was to effect arrests, which was in furtherance of the agency's interests).

It is hard to imagine how an officer's attempted second-degree murder is within the scope of his employment. Though Warrington was on-duty, wearing a police uniform and carrying a City-issued firearm, as the Maryland Court of Appeals (now Supreme Court) stated in *Sawyer*, "in virtually all of the cases in which this Court has held that an assault by an employee was outside the scope of employment, the assault occurred at a time when the employe was 'on duty.'" *Sawyer,* 322 Md. at 259 (citations omitted). The mere fact that Warrington was dressed in a police uniform does not render his actions within the scope of his employment, just like in *Wolfe* where an officer in uniform and a marked vehicle made a traffic stop and then raped the female motorist. Nothing about Warrington's conduct here was in furtherance of the City's interests or business. Warrington was not investigating a crime, had not ordered or instructed Richardson to stop, and was not attempting to arrest him. The gunshot was entirely gratuitous and unjustified. The allegations in the First Amended Complaint coupled with the inclusion of his criminal conviction for a specific intent felony takes his conduct outside the scope of his employment.

Accordingly, the City cannot be vicariously liable for his criminal acts and must be dismissed.

**B. THE CITY IS NOT VICARIOUSLY LIABLE FOR EXCESSIVE FORCE.**

Finally, Counts 3 and 4 allege excessive force and unlawful seizure under Articles 24 and 26 of the Maryland Declaration of Rights. "Article 24 protects substantive due process rights

while Article 26 protects the right to be free from unreasonable searches and seizures, courts therefore construe the provisions in pari materia with the Fourteenth and Fourth Amendments to the U.S. Constitution, respectively." *Hayes v. City of Seat Pleasant*, Civil No. DKC-08-2548, 2010 U.S. Dist. LEXIS 97137, at *4 (D. Md. Sept. 16, 2010).

To state a claim for the excessive use of force and/or an unlawful seizure, Plaintiffs must adequately allege that they were seized. Indeed, if a person is never seized, then the Fourth Amendment simply has no application. *See Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989). In fact, as one federal court put it, "[a]lthough a seizure by physical force can occur when a police officer actually shoots a suspect, ***firing a shot that misses a suspect does not constitute a seizure by physical force***." *Plaza-Bonilla v. Cortazzo*, 2009 U.S. Dist. LEXIS 18882, *16 (E.D. Pa. Mar. 9, 2009). And, that is precisely what occurred here.

In *Plaza-Bonilla*, officers conducted a traffic stop on a vehicle that had been illegally parked in front of a known drug house. *Id*. at *2. While officers were investigating the occupants, plaintiff jumped back into the driver's seat and put the car into gear. *Id*. at *4. Plaintiff struck both officers with the car, and both Officer Cortazzo and Officer Burkhart discharged their firearms at Plaintiff. *Id*. at *5. Officer Cortazzo's shots made contact with the Plaintiff whereas Officer Burkhart's did not strike him. *Id*. at *7.

In its analysis, the Pennsylvania federal court noted that a seizure only occurs when a police officer, by means of physical force or show of authority, has in some way restrained a citizen's liberty. *Id*. at *15 (citations omitted). Importantly, the court stated, "[a]lthough a seizure by physical force can occur when a police officer actually shoots a suspect, *firing a shot that misses a suspect does not constitute a seizure by physical force*." *Id*. at *16 (emphasis added) (citations

6

omitted).  The court went on to rule that "[b]ecause it is undisputed that none of the shots fired by Burkhart actually struck Plaintiff, we find that Burkhart did not physically seize Plaintiff by discharging his firearm."  *Id.*

Consequently, Count 3 fails to state a claim for excessive force insofar as it is undisputed, based on the pleadings, that Warrington's shot did not make contact with any of the Plaintiffs.

The City recognizes, however, that the lack of contact between the gunshot and any of the Plaintiffs does not end the inquiry with respect to the alleged unlawful seizure in Count 4.  This is because a seizure may occur by a show of authority as well.  Where "physical force is absent, a seizure requires both a 'show of authority' from law enforcement officers and 'submission to the assertion of authority' by the [individual]."  *United States v. Stover*, 808 F.3d 991, 995 (4th Cir. 2015).  To establish a seizure by a show of authority, a plaintiff must demonstrate both that the officer objectively showed authority and that the plaintiff actually submitted to such authority. *See United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (citing *California v. Hodari D.*, 499 U.S. 621, 626-27, 628, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991)). No seizure occurs, however, if the suspect does not yield after shots are fired at him. *See generally Bella v. Chamberlain*, 24 F.3d 1251, 1256 (10th Cir. 1994) (finding that shots fired at  plaintiff's helicopter constituted a show of authority but not a seizure because the plaintiff did not submit); *Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir. 1993) (finding that "the shots that were fired at [plaintiff's] truck and that did not hit [plaintiff] were not seizures because they . . . failed to produce a stop"). To be sure, whatever form the submission takes, without actual submission to the police, there is at most an attempted seizure, which is not subject to Fourth Amendment protection.  *See Brendlin v California*, 551 U.S. 249, 254 (2007).

7

Here, the First Amended Complaint does not allege that Plaintiffs took any particular action *after the shot was fired toward Richardson*.  Instead, the First Amended Complaint alleges that Warrington was in uniform, asked Richardson a question, and that he stopped to respond.  ECF 19 at ¶15.  Those events occurred, however, *before* the shot was fired, and do not as a matter of law constitute a "seizure" within the meaning of the Fourth Amendment; rather, that is a consensual encounter.  The pleading does not allege that Richardson was told to stop, stay there, or that he was not free to go (or felt that he was not free to go – and indeed he was moving towards the vehicle to get back inside when Warrington shot at him).  In fact, the First Amended Complaint alleges that Warrington did not issue any commands at all.  ECF 19 at ¶18.  As such, the Complaint does not allege the necessary element of a seizure by show of authority in terms of any Plaintiff submitting to it *when the shot was fired*.  At most, the First Amended Complaint alleges an "attempted seizure," which does not state a claim here.

## CONCLUSION

The foregoing premises having been considered, the City of Bowie, one of the Defendants, respectfully requests that this Honorable Court grant its Motion to Dismiss.

Respectfully submitted,

_____/s/_____
JASON L. LEVINE 16631
7225 Parkway Drive
Hanover, Maryland 21076
443/561-1708
jlevine@lgit.org
*Counsel for Defendant City of Bowie*

## CERTIFICATE OF SERVICE

I certify that on June 16, 2026, the foregoing paper was filed and served via the Court's CM/ECF system.

_____/s/_____
JASON L. LEVINE 16631